IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATLAS COMMODITIES, L.L.C., | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:15-CV-00005 |
| | § | |
| DANIEL CROSBY and | § | |
| LEGEND ENERGY ADVISORS, L.L.C., | § | |
| Defendants. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Atlas Commodities, L.L.C. files this, its Second Amended Complaint against Daniel Crosby and Legend Energy Advisors, L.L.C. as follows:

### PARTIES

1. Atlas Commodities, LLC ("Atlas") is a Texas limited liability corporation located in Houston, Harris County, Texas.

2. Daniel Crosby ("Crosby") is a citizen of Connecticut and resides at 65 High Ridge Road, Number 381, Stamford, Connecticut 06905.

3. Legend Energy Advisors, L.L.C. ("Legend") is a Wyoming limited liability corporation with its principal place of business at One Penn Plaza, Suite 6184, New York, New York 10019.

### JURISDICTION

4. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

### FACTS

5. Atlas is a commodities brokerage and retail energy advisor. It focuses on the physical delivery of energy – including natural gas, crude oil, and electricity -- together with

1

financial derivatives thereof, exclusively in over-the-counter markets (i.e., not on a formal commodities exchange such as the NYMEX or the Chicago Board of Trade.) Atlas' revenue is entirely dependent on these over-the-counter trades made by its brokers.

6. Atlas has spent years and substantial sums of money developing its customer lists. These lists, which variously contain buyer contacts, pricing information, client information, and customer preferences, are maintained in the strictest confidence at Atlas. The information contained in these lists is not publicly available and is extremely valuable.

7. On or about October 2012, Crosby began employment with Atlas, selling retail electricity. In order to further Atlas' business, Crosby was granted access to Atlas' confidential customer lists. Crosby used those lists to develop relationships with Atlas customers and make sales. Crosby traveled regularly to Houston to meet with Atlas management and employees throughout his employment.

8. In addition to making sales for Atlas, Crosby was also placed in charge of the retail desk, giving him managerial authority. Crosby used that authority to make purchases on Atlas' behalf.

9. In or about October 2012, Crosby began authorizing the purchase of a software billing platform from a company called eSight Energy, Inc. ("eSight"). Crosby represented to Atlas that customer data could be read by this software and used to generate bills for Atlas' customers to send to their customers. Crosby caused Atlas to spend in the neighborhood of $100,000 on this software.

10. Without notice, Crosby quit Atlas on April 15, 2014. Soon after he left, the company discovered that the eSight software simply does not do what Crosby said it did. The

software was, in fact, nearly completely useless to Atlas. It was designed for European markets, which categorize billing records substantially differently than companies in the US, where Atlas and its customers operate. Crosby was aware that the software was useless to Atlas while he was an employee. Crosby intentionally hid the software's uselessness to Atlas, but continued to cause Atlas to make substantial payments for it.

11. Atlas could not have discovered this before Crosby's departure for at least two reasons: (i) it was Mr. Crosby's responsibility to oversee the use of the software; and (ii) Mr. Crosby gave Atlas every reason to believe that the software worked, though he knew it didn't.

12. Following his resignation, Atlas requested that Crosby assist it in investigating and remediating the damage done to it by the purchase and installation of the eSight software. Crosby simply ignored that request.

13. Atlas additionally demanded that Crosby and Legend, his new venture which competes directly with Atlas, stop soliciting buyer contacts Crosby knows solely due to his access to Atlas' confidential information and trade secrets. Crosby refused.

14. Crosby apparently had reason to ignore Atlas' demand that he stop soliciting its customers – he is using Atlas' confidential/trade secret information to solicit Atlas' customers for himself and Legend at Atlas' expense.

15. On May 30, 2014, for the first time, Crosby claimed that Atlas owed him his "final paycheck". This money is not owed.

### CAUSES OF ACTION

#### *BREACH OF FIDUCIARY DUTY*

16. Crosby owed a fiduciary obligation to Atlas, which he breached.

3

17. Once it came into existence, Legend knowingly participated in the breaches of fiduciary duties described above. As such, Legend became a joint tortfeasor with Crosby.

18. Legend knew that Crosby owed fiduciary obligations to Atlas. It was well aware that it was participating in the breach of the fiduciary duties described above.

19. Atlas has been damaged as a result of the breaches of fiduciary duty alleged herein. In addition to any other actual damages, as required under Texas law the Defendants should each be required to disgorge and/or forfeit any revenue or profit earned as a result of the breaches of fiduciary duty.

20. The Defendants have acted with malice as that term is defined under Texas law. An award of exemplary damages against both of them is therefore appropriate.

## *UNFAIR COMPETITION*

21. By contacting and soliciting buyer contacts Crosby was not aware of before he began employment at Atlas, Defendants have intentionally misappropriated Plaintiff's customer lists, a trade secret.

22. As a direct and proximate result of Defendants' conduct, Atlas has suffered substantial harm and is entitled to compensatory and exemplary damages. These damages include, but are not limited to, recapture of all compensation or other value that the Defendants have received as a result of their unfair competition.

## *UNJUST ENRICHMENT*

23. By taking and using Atlas' confidential information and by breaching their fiduciary duties, the Defendants have wrongfully secured benefits for themselves at Atlas' expense.

4

24.     The use of Atlas' property was the result of Defendants' fraud, duress, or the taking of undue advantage.

25.     As a result of their fraud, duress, or the taking of undue advantage, the Defendants have been unjustly enriched. Money realized as a result of their misconduct should be returned to Atlas in disgorgement.

### *TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS*

26.     Through the Defendants' purposeful misappropriation of Atlas' trade secrets and confidential information, the Defendants interfered with Atlas' prospective business relations.

27.     Since April 2014, when Crosby resigned without notice and began soliciting Atlas' customers through the use of Atlas' misappropriated confidential information and trade secrets, there was a reasonable probability that Atlas would enter into business relationships, but the Defendants' independently tortious or unlawful acts prevented the relationships from forming. The Defendants acted with a conscious desire to prevent the relationships from occurring or knew the interference was certain or substantially certain to occur as a result of their conduct. Atlas suffered actual harm or damages as a result of the Defendants' interference.

### *NEGLIGENCE*

28.     Crosby owed a duty to Atlas. This duty included the obligation to act with reasonable care, and in the best interest of Atlas.

29.     When Crosby investigated the eSight software, Crosby knew or should have known that it did not and would not work for the purpose intended by Atlas.

30.     Crosby caused Atlas to purchase the software anyway, and then agreed to renew the software license a little more than a year later. As a direct and proximate result of this breach of his

duty to Plaintiff, Atlas has been damaged.

31. Though Atlas is attempting to mitigate its loss, Atlas has sustained damages of at least $90,000.

### *GROSS NEGLIGENCE*

32. Crosby, knowing that his decision to cause Atlas to purchase non-functioning software was a breach of his fiduciary duty to Atlas and an act of negligence, purposefully hid the software's lack of functionality from Atlas while an employee.

33. Crosby resigned from Atlas without notice on April 15, 2014. It was not until soon after that date that Atlas knew, or could have known, that Crosby caused it to spend close to $100,000 on non-functional software.

34. Following his departure without notice, Atlas assigned other employees to take over duties previously assigned to Crosby. These other employees soon discovered that the eSight software was simply non-functional for Atlas' purposes.

35. Crosby's concealment of this fact was intentional.

36. Atlas held several conference calls and at least one in-person meeting with principals of the eSight software vendor, who traveled from London to assist Atlas in understanding what the software did and did not do. Atlas requested that Crosby assist it in investigating and mitigating or remediating the damage to the company caused by the purchase of non-functional software. Crosby ignored this request, causing Atlas additional damage.

37. Crosby's decision to purchase the software involved an extreme degree of risk, which involved the probability that Atlas would sustain substantial damage. His decision to ignore Atlas' requests for help in mitigating the damage was intentional.

38. Crosby was actually, subjectively aware of the risk his conduct posed to Atlas. He nevertheless proceeded with conscious indifference to Atlas' welfare.

39. Crosby knew full well that his conduct posed an extreme risk of harm to Atlas but did not care.

40. Crosby's gross negligence has caused Atlas substantial harm, which it continues to suffer. An award of exemplary damages against Crosby is therefore appropriate.

### *VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT*

41. By failing to maintain the secrecy of Atlas' trade secrets or limit their use, Crosby and Legend continue to possess Atlas' trade secrets by improper means. Their contacting of buyers known to them only as a result of Crosby's improper possession and use of Atlas' trade secrets constitutes a misappropriation of those trade secrets.

42. Atlas has been damaged by Crosby and Legend's misappropriation. Atlas therefore seeks legal and equitable relief, including injunctive relief.

### *DECLARATORY JUDGMENT*

43. Pursuant to the Declaratory Judgment Act and by reason of the foregoing, Atlas is entitled to a declaratory judgment that:

   a. Crosby owed a duty of loyalty to Atlas, which he breached; and

   b. Atlas does not owe Crosby wages.

44. An actual and substantial controversy exists as to the rights and status of the parties to this action, which would be resolved by the declarations sought.

### *APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION*

45. Defendants' continued misappropriation of Plaintiff's confidential information and

trade secrets has caused and continues to cause Plaintiff irreparable harm. On final trial of this case, Atlas requests entry of a permanent injunction prohibiting Defendants and anyone associated with them from using its confidential information and/or trade secrets.

## **Prayer**

Plaintiff requests that Defendants Daniel Crosby and Legend Energy Advisors, LLC be cited to appear and answer herein, and that on final trial of this cause, Atlas have and recover judgment of and against Defendants as follows:

1. An award of actual damages in an amount to be determined by the jury;

2. An award of exemplary damages in an amount to be determined by the jury;

3. For prejudgment interest on all past due amounts at the legal rate until final judgment;

4. For post-judgment interest at the highest rate allowed by law, on all amounts awarded until paid;

5. A permanent injunction preventing Defendants from further misappropriation of Plaintiff's confidential information and trade secrets; and

6. For such other and further relief, at law or in equity, to which Atlas may be justly entitled.

Respectfully submitted,

BERG FELDMAN JOHNSON BELL, LLP

By:     /s/ Geoffrey Berg
    Geoffrey Berg (gberg@bfjblaw.com)
    Texas Bar No. 00793330
    4203 Montrose Boulevard, Suite 150
    Houston, Texas 77006
    713-526-0200 (tel)
    832-615-2665 (fax)

ATTORNEY-IN-CHARGE FOR PLAINTIFF
ATLAS COMMODITIES, L.L.C.

OF COUNSEL:

Kathryn E. Nelson (knelson@bfjblaw.com)
Texas Bar No. 24037166
BERG FELDMAN JOHNSON BELL, LLP
4203 Montrose Boulevard, Suite 150
Houston, Texas 77006
713-526-0200 (tel)
832-615-2665 (fax)

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via Electronic Court Filing ("ECF") on January 23, 2015.

                                              /s/ Geoffrey Berg
                                            Geoffrey Berg